UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MOHAMMAD M. ASSAF,<br><br>            Plaintiff,<br><br>  v.<br><br>PROGRESSIVE DIRECT INSURANCE COMPANY,<br><br>            Defendant. | CASE NO. C19-6209 BHS<br><br>ORDER |

THIS MATTER is before the Court on Plaintiff Mohammed Assaf's Motions for Class Certification, Dkt. 58, and to Compel Compliance,[1] Dkt. 125, and on Defendant Progressive's Motions to Exclude Plaintiffs' Experts Angelo Toglia, Dkt. 94, and Bernard Siskin, Dkt. 96. Progressive also filed a surreply opposing class certification, Dkt. 121, and moving to strike as untimely disclosed the opinions in the Reply Declaration of Assaf's expert, Mike Harber, Dkt. 111-11. Assaf, in turn, seeks to strike that surreply as itself untimely. Dkt. 121.

---

[1] Progressive opposes this motion (seeking reimbursement for $113 in tolls, miles, and Uber fares) as *de minimus* and, because the amount was paid, moot. Dkt. 127. Assaf's Motion to Compel Compliance, Dkt. 125, is **DENIED**.

ORDER - 1

The case is a putative class action alleging that Progressive fails to pay for the diminished value (often referenced as "DV") of its insureds' vehicles under their Progressive policies' underinsured motorist coverage. Specifically, Assaf asserts that Progressive's policies promise to "pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of property damage sustained by an insured person [and] caused by an accident[.]" Dkt. 60 at 6 (citing Dkt. 59-21 at 10).

Assaf seeks as damages the difference between the fair cash market value of the vehicle immediately before the occurrence and its fair cash market value immediately after it has been repaired—a measure that the Court used in a similar diminished value case, *Jenkins v. State Farm Mut. Auto. Ins. Co.*, No. 15-5508-BHS, 2018 WL 526993 (W.D. Wash., Jan 24, 2018). *See also Moeller vs. Farmers Ins. Co.*, 173 Wn.2d 264 (2011).

Assaf contends that Progressive breached its contract with him, and acted in bad faith, when it failed to compensate him for the diminished value his property suffered as the result of an accident. He asserts that his claim and his experience was similar to the experience of other class members.

In 2016, Assaf's 2013 Honda Accord was damaged in an accident caused solely by an uninsured motorist. Progressive paid McLeod's Auto Body in Kirkland $11,394.60 to repair the car. Dkt. 1-1 at 5. Assaf returned the car to McLeod's several times for what he contends were lingering effects from the accident, including a loose trunk, a window crack, and a leaking strut. In March 2017, Assaf retained Mike Harber to evaluate his

Honda. Harber opined that the car had suffered $5,800 in diminished value as a result of the accident. *See* Dkt. 61-22. Assaf contends that his car cannot be restored to its preloss condition, and that he suffered covered property damage in the form of diminished value, which Progressive wrongfully failed to pay under its policies' underinsured motorist coverage.

Assaf seeks certification of a class consisting of

> All PROGRESSIVE DIRECT INSURANCE COMPANY insureds with Washington policies issued in Washington State, where the insured's vehicle damages were covered under Underinsured Motorist Coverage with a date of loss on or after November 12, 2013, and
> 1. the repair estimates on the vehicle (including any supplements) totaled at least $1,000; and
> 2. the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and
> 3. the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.

Dkt. 58 at 1.

Assaf argues that the proposed class members' claims involve common questions of fact and law: whether Progressive breached its insurance policy when it uniformly failed to pay its insureds for the diminished value caused by accidents involving underinsured motorists. He argues that the class claims (and Progressive's defenses) are typical, and that the common questions of law and fact predominate, making class treatment of them superior to individual litigation.

Assaf's claim, and to some extent his motion for class certification, relies on expert opinion testimony from a statistician, Dr. Bernard Siskin, and a mechanical engineer, Angelo Toglia. Both witnesses have been offered as experts in numerous cases

in this Court and many others involving similar claims. Progressive opposes class certification, Dkt. 87, and moves to exclude Siskin's and Toglia's expert testimony, Dkts. 94 and 96.

Progressive argues that, even with the experts' opinions, Assaf cannot demonstrate that class treatment of his claims complies with Federal Rule of Civil Procedure 23's commonality, typicality, predominance, and superiority requirements. It argues that Assaf's reliance on the Washington Supreme Court's opinion in *Moeller v. State Farm*, 173 Wn.2d 264 (2011), is misplaced. It argues that under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and Federal Rule 23, common questions require common *answers*, and Assaf's claims do not lend themselves to common answers. Dkt. 87 at 10. It also argues that Assaf's claims are not typical and that any common questions do not predominate over individual questions.

## I.   DISCUSSION

**A.   Class Certification.**

Under Fed. R. Civ. P. 23(a), the plaintiff must satisfy four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). In addition to these four requirements, the plaintiff must satisfy at least one of the categories of Rule 23(b). *Zinser*, 253 F.3d at 1186. A class action may be maintained under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members," and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As the party seeking class certification, Assaf bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended*, 273 F.3d 1266 (9th Cir. 2001).

Rule 23 does not set forth a mere pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether the plaintiff has met the requirements of Rule 23. *Zinser*, 253 F.3d at 1186. Under Washington law, Courts err on the side of certification because a class is always subject to later modification or decertification. *Moeller*, 173 Wn.2d at 278. There is no such presumption in favor of certification under Fed. R. Civ. P. 23.

Progressive does not dispute that Assaf meets Rule 23's numerosity and adequacy of representation requirements. It does argue that he has not met the remining prerequisites for class certification.

The disputed issues are addressed in turn.

**1.      Commonality**

To satisfy Rule 23(a)'s "common question of law or fact" requirement, the plaintiff's claims must "depend upon a common contention" that is "capable of classwide resolution." *Dukes*, 564 U.S. at 350. This means that determining the truth or falsity of the contention "will resolve an issue that is central to the validity of each one of the claims in

one stroke." *Id*. The key question is whether a "classwide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Id*. Nevertheless, the commonality requirement is "construed permissively."[2] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). It "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012).

Assaf relies on the Washington Court of Appeals' opinion in *Moeller v. State Farm,* 155 Wn. App. 133, 148–149 (2010), as "directly on point" in support of his claim that the questions he presents are sufficiently common. Dkt. 58 at 16. He argues that the common questions here, as there, are:

> (1) "whether each class member's vehicle suffered reduction in value as a result of the vehicle having been in an accident without consideration of repair related diminished value;"
> (2) "whether each class member's vehicle could be returned to pre-accident condition;" and
> (3) "whether the insurer engaged in a common and systematic course of conduct designed to process physical damage claims so as to avoid acknowledging or paying DV claims."

*Id*. (quoting *Moeller*, 155 Wn. App. at 149).

Progressive argues, persuasively, that because these questions do not have common answers, they are not sufficiently common under *Dukes* and Fed. R. Civ. P. 23(a). Dkt. 87 at 10. It argues that some vehicles within the class definition may have diminished value, and some may not, and it is inappropriate to assume either that all of the class vehicles can be returned to their pre-accident condition, or that none of them

---

[2] The predominance of the common questions over individual questions is a more stringent standard.

ORDER - 6

can. Instead, it argues, the questions and the answers are specific to individual vehicles, accidents, and repairs, making the inquiries inherently individualized. *Id*.

As to Assaf's individual claim, Progressive argues that the specific issue is whether Assaf's Honda incurred post-repair, covered diminished value which Progressive failed to pay, and if so, in what amount. And it argues that if a single answer will not resolve an issue that is central to each of the class members' claims, the class lacks the necessary cohesion and commonality. Dkt. 87 at 11 (citing *Parsons*, 754 F.3d at 575 (quoting *Dukes*, 564 U.S. at 350)).

Progressive argues that there are ten individualized questions arising from each class member's diminished value claim, and that those questions can be answered only by individualized, and not common, proof. It argues that as a result, Assaf cannot demonstrate that any common questions predominate over individualized questions. The Court agrees and addresses below the commonality of the claims in discussing whether they predominate.

**2.   Typicality**

"[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon, 150 F.3d at 1020*. This requirement "ensures that 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 631 (N.D. Cal. 2014) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982)). "Typicality refers to the nature of the claim or defense of the class

ORDER - 7

representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). Courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 508.

Assaf argues that his claim is typical because, like the class members, he purchased a Progressive auto policy with diminished value and underinsured motorist coverages, and Progressive failed to disclose that coverage, adjust the loss for it, or pay him for diminished value. He claims that he, like the class, is entitled to recover diminished value.

Assaf correctly argues that differences in the *amount* of individual diminished value damages is not enough to defeat certification. Dkt. 60 at 17 (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed [does] not defeat class certification.")). But he does not argue, or demonstrate, that each member of the class as he defines it—those whose vehicles suffered structural or sheet metal damage, or which required body work or paint—own a vehicle that cannot be repaired to its pre-accident condition. He does not squarely address *whether* each class member suffered diminished value.

Progressive argues that the issue is not whether there is a variation in damages, but whether there is a variation among class members as to whether there is a covered DV loss, at all. Dkt. 87 at 12. It also emphasizes that, unlike the majority of the class, Assaf

ORDER - 8

obtained an individualized expert report (Harber's) concerning the diminished value of "the subject vehicle"—his 2013 Honda—based on contacting dealers about that vehicle's trade in value. Dkt. 87 at 12 (citing 61-22 at 5).

Progressive argues that Assaf's claim is atypical for several reasons. First, Assaf testified that he does not believe McLeod's properly repaired his Honda. Progressive argues that, if that is true, it is not evidence that his car cannot be repaired to its pre-accident condition, and it is not a covered claim for diminished value as he defines it or under Washington law. *Id*. It also argues that, while Assaf asserts he personally was "strung along" and thus had to pay Harber $375 for a DV Report, there is no evidence or contention that any other—much less *every* other—class member had to go to such lengths. *Id*. at 13.

Progressive also argues that McLeod's Rule 30(b)(6) deponent (who, unlike Assaf's experts, inspected the car) testified that Assaf's Honda *was* restored to its pre-accident condition. If that is true, any diminished value is not the result of demonstrable physical damage. A showing of such damage is required under Washington law. Diminished value is recoverable only when the vehicle "sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its preloss condition." *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271 (Wash. 2011); *Mansker v. Farmers Ins. Co. of Wash.*, No. C10-0511JLR, 2010 U.S. Dist. LEXIS 95690, at *22 (W.D. Wash. Sept. 13, 2010) ("[D]iminished value loss requires *demonstrable* physical damage."). Assaf concedes that "stigma" damages are not covered, and he does not seek them here. Dkt. 115 at 9.

At the very least, McLeod's Auto Body's testimony is unrebutted evidence that Assaf's claims are not typical of the class's. This conclusion is bolstered when the Court considers, as it must, Progressive's defenses. Assaf's class definition, and his arguments and evidence in support of certification, effectively assume that any qualifying vehicle with damage requiring frame or body or paint work costing more than $1,000 cannot be restored to its pre-accident condition or, put another way, suffered covered diminished value. Siskin's 2001 regression analysis of 1995–2001 repaired vehicle auction prices, and his undeveloped opinion that such vehicles sell for less, even excluding stigma damages, do not directly address this point. See Dkt. 61-25.

Assaf has not met his burden of showing that his claim is typical of the proposed class's claim.

### 3. Predominance of Common over Individual Questions.

Rule 23(b)(3)'s predominance inquiry "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Common questions are defined by the plaintiff's ability to make a prima facie showing using the same evidence. *Id*. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id*. (internal quotations omitted); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("[D]ifferences in

damage calculations do not defeat class certification."). However, "[i]f the plaintiff cannot prove that damages resulted from the defendant's conduct, then the plaintiff cannot establish predominance." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

Assaf contends that the common class questions predominate because Progressive uniformly denies diminished value. He argues that the overriding common questions are (1) the fair measure of DV loss and the best way to calculate it, and (2) whether Progressive owes DV under its policies' underinsured motorist coverage. He argues that, because Progressive's insurance policies are form contracts, it is particularly appropriate to use the class action procedure. Dkt. 60 at 19 (citing *Mortimer v. FDIC*, 197 F.R.D. 432, 438 (W.D. Wash. 2000)).

Implicit in this framing is the *fact* of a covered DV loss. Assaf's arguments on typicality, discussed above, similarly emphasized the *amount* of damage and his ability to accurately demonstrate it at trial, with little argument or evidence supporting the necessary conclusion the class's vehicles actually suffered a DV loss because they could not be restored to their preloss condition.

Assaf again acknowledges that the class members' individual actual DV damages may vary, and he correctly argues that such variation is not an impediment to class certification. *Id*. He emphasizes that his expert, Dr. Siskin, will, when the merits are reached, use statistics to determine the individual losses and the class's aggregate loss. *Id*. at 20. He dismisses Progressive's argument, also discussed above, that not all of the vehicles in the class as he proposes to define it necessarily suffered covered diminished

value. Some vehicles, perhaps Assaf's, received improper, faulty, or incomplete repairs, or were restored to their preloss condition. Some others had been previously repaired. Assaf asserts this is presents a factual, damages question that can be addressed at trial, with Dr. Siskin's updated opinion, based on updated data input for his model. He argues that such individual questions do not predominate over the common questions he raises. *Id*.

Progressive argues that individual questions predominate, indeed that they overwhelm, any common questions. Dkt. 87 at 14. It accurately identifies ten such individual questions, Dkt. 87 at 14–23, but the Court is most concerned with the first: "Did the Vehicle Sustain Diminished Value?" *Id.* at 14. Progressive argues that this inquiry necessarily turns on individualized questions and proof, and that Siskin's model and his expert opinion "simply *assumes* that all vehicles suffer diminished value" as the result of the sort of accident included in the class definition. *Id*. at 15. It argues that its experts contend (and Assaf's expert Harber concedes) that some vehicles within the class did not suffer a covered diminished value loss. Indeed, the proposed class includes vehicles with $1,000 in damage requiring paint, which inevitably includes minor damage and replaceable parts (like bumpers) that would permit the vehicle to be returned to its preloss condition, and which would not lead to covered diminished value. Thus, while this question is common to each class vehicle, the answer may be different for each vehicle. Progressive argues, and the Court agrees, that the result is that a trial would involve "thousands of mini trials" litigating highly individualized questions. Dkt. 87 at 3.

This remains the glaring flaw in Assaf's motion. The Court does not view the evidence in the light most favorable to Assaf in evaluating whether his evidence demonstrates that common questions predominate over individual questions and answers. On class certification, it is the plaintiff's burden to demonstrate that his proposed class meets Rule 23's requirements, including Rule 23(b)(3)'s requirement that any common questions predominate over individual inquiries.

The Court need not exclude Dr. Siskin's expert opinion to conclude that it does not demonstrate that the common issues presented by Assaf's class claims do not predominate over individualized inquiries or answers.[3] These issues relate not only to whether a given vehicle within the class definition in fact suffered covered diminished value (discussed above), but also to the cause(s) of any difference in value: Was the car properly repaired? Was it in a prior accident, or did it otherwise have pre-existing damage? Is the car's value less than expected because it was poorly maintained, smoked in, or is an unpopular color?

Nor is the Court persuaded that Siskin's current model appropriately addresses even the calculation of covered diminished value losses. This Court and others have explained that Siskin's model is "outdated" and that it is a "poor fit" factually for a diminished value case involving vehicles that are much newer than the newest car in his

---

[3] Progressive also identifies as individualized issues: whether it paid a diminished value claim, whether paying such a claim would exceed the policy limits, and whether the vehicle suffered qualifying damage. Dkt. 87 at 1423. It also points out that, while the class definition excludes leased vehicles, Assaf does not set forth a methodology for actually excluding such vehicles. It argues, and the Court agrees, that whether the vehicle was leased is another, important individualized inquiry.

underlying database. The oldest vehicle in that database (1995) is more than twenty-five years older than the newest car within Assaf's proposed class definition. Progressive correctly points out that newer cars are more advanced, and built and repaired with better technology than those in Siskin's study, and asserts that he has not even "tweaked' his model since 2001. Dkt. 87 at 17. Assaf and Siskin do not dispute that his model and his opinion would have to be further developed before it would be admissible at trial.

The Court concludes that any commonality between Assaf's claim and the class's claims do not predominate over the individualized inquiries. The answers are not necessarily the same.

Progressive is entitled to assert as a defense to Assaf's individual claim that, based on the evidence related to his claim, he did not suffer a covered diminished value loss. It is entitled to explore and potentially assert that defense as to each defined class member's DV claim.

The Court concludes that the class claims do not present common factual or legal questions and answers. Assaf's claims are not typical of the class, and any common questions do not predominate. A class action in this matter is not superior to individualized resolution, despite the fact that such resolution is not efficient.

***

The Motion for Class Certification, Dkt. 58, is **DENIED**. Progressive's Motions to Exclude Toglia's and Siskin's Expert Testimony, Dkts. 94 and 96, are **DENIED as moot**. Assaf's Motion to Compel Compliance, Dkt. 125, is **DENIED**. The Motions to Strike, Dkts. 120 and 121, are **DENIED as moot**.

**IT IS SO ORDERED**.

Dated this 30th day of August, 2023.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge